IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| WILCOX & GIBBS, INC. | ) | BANKRUPTCY CASE NO. 99-00928 (PJW) |
| | ) | |
| DEBTOR. | ) | |

| | | |
|---|---|---|
| REXEL, INC. | ) | |
| | ) | CIVIL ACTION NO. 04 – 850 (GMS) |
| APPELLANT | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| JUDITH MONTILLA, | ) | |
| | ) | |
| APPELLEE. | ) | |

ANSWERING BRIEF OF APPELLEE JUDITH MONTILLA

Dated: June 1, 2005

Carl N. Kunz, III, Esq. (#3201)
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899
Telephone:    (302) 888-6811
Facsimile:    (302) 571-1750

-and-

Barbara E. Olk, Esq.
Trief & Olk
150 East 58th Street, 34th Floor
New York, New York 10155
Telephone:    (212) 486-6060
Facsimile:    (212) 317-2946

1188948/2

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT..................................................................................1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ..................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY............................................................2

SUMMARY OF ARGUMENT ......................................................................................8

ARGUMENT........................................................................................10

    I.   APPELLEE'S MOTION TO REMAND WAS TIMELY ................................10

    II.  THE BANKRUPTCY COURT DID NOT PUT THE BURDEN OF PROOF ON THE WRONG PARTY .........................................17

    III. THE NATURE OF THIS PROCEEDING AND THE RIGHT TO REMAND IT TO STATE COURT IRRESPECTIVE OF WHETHER IT IS CORE OR NON-CORE........................................................................18

    IV. THIS PRODUCTS LIABILITY ACTION BELONGS IN THE NEW YORK SUPREME COURT FOR KINGS COUNTY ........................................................................20

CONCLUSION........................................................................22

(i)

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                     <u>Page</u>

<u>1015 Half Street Corp. v. Warehouse Concepts, Inc.</u>, 99 Civ. 1174,
    1999 U.S. Dist. Lexis 19135 (D.D.C., Oct. 26, 1999) ....................................................15, 16

<u>Billington v. Winograde</u> (<u>In re Hotel Mt. Lassen, Inc.</u>),
    207 B. R. 935 (Bankr. E.D. Ca. 1997)......................................................................11, 12, 14

<u>Borden v. Sinskey</u>, 530 F.2d 478 (3d Cir. 1976) …....................................................................18

<u>Broyles v. U.S. Gypsum Co.</u>, 266 B.R. 778 (E. D. Texas 2001)......................................................20

<u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 115 S. Ct. 1493, 131 L. E.2d 403 (1995).........................17

<u>Chickaway v. Bank One Dayton, N.A.</u>, 261 B. R. 646 (S.D. Miss. 2001).........................................20

<u>Grace Community, Inc. v. KPMG Peat Marwick, LLP</u>
    (<u>In re Grace Community, Inc.</u>), 262 B. R. 625 (Bankr. E.D. Pa. 2001) ............... 7, 17, 18, 20

<u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906 (3d Cir. 1985),
    <u>cert</u>. <u>denied</u>, 476 U.S. 1171, 106 S. Ct. 2895, 90 L. Ed.2d 982 (1986) ...........................9, 10

<u>In re Asbestos Litigation</u>, 01 Civ. 1790, 2002 U.S. Dist. Lexis 3083
    (D. Or. Feb. 1, 2002) .........................................................................................15

<u>In re. Chicago, Missouri & Western Railway Co.</u>, 21 Bankr. Ct. Dec. 573,
    1991 Bankr. Lexis 710 (Bankr. N.D. Ill. Feb. 20, 1991)......................................................19

<u>In re Federal-Mogul Global, Inc.</u>, 282 B. R. 301 (D. Del. 2002),
    <u>mandamus denied</u>, 300 F.3d 368 (3d Cir. 2002), <u>cert</u>. <u>denied</u>,
    <u>Daimler Chrysler Corp. v. Official Committee of Asbestos Claimants</u>,
    537 U.S. 1148, 123 S. Ct. 884, 154 L.Ed.2d 851 (2003) .....................................................19

<u>In re Shell Oil Co.</u>, 932 F.2d 1523 (5th Cir. 1991) ....................................................16, 17

<u>In re Trans World Airlines, Inc.</u>, 145 F.3d 124 (3d Cir. 1998)..........................................................20

<u>North River Ins. Co. v. CIGNA Reinsurance Co.</u>,
    52 F.3d 1194 (3d Cir. 1995).......................................................................................9

Student A. v. Metcho, 710 F. Supp. 267 (N.D. Cal. 1989)............................................15, 16

Texas Gulf Trawling Co., Inc. v. RCA Trawlers & Supply, Inc.
        (In re Ciclon Negro, Inc.), 260 B. R. 832 (Bankr. S.D. Texas 2001)..............................12, 14

Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 116 S. Ct. 494,
        133 L. Ed.2d 461 (1995) ................................................................... 9, 12, 13, 14

Unico Holdings, Inc. v. Nutramax Products, Inc.,
        264 B. R. 779 (Bankr. S.D. Fla. 2001) ......................................................................12

Western Properties Service Corp. v. Shell Oil Co., 358 F.3d 678 (9th Cir. 2004) … .......................18

Other Authorities                                                                                                            Page

28 U.S. C. § 1441 ...............................................................................................................12

28 U.S. C. § 1441(a) ..........................................................................................................13

28 U.S.C. § 1443 ...............................................................................................................13

28 U.S.C. § 1446(b) ..........................................................................................................15

28 U.S.C. § 1447(c) ............................................................6, 7, 8, 10, 11, 12, 13, 14, 15, 17

28 U.S.C. § 1447(d) ....................................................................................................12, 13

28 U.S.C. § 1452(a) ...........................................................................................................3, 13

28 U.S.C. § 1452(b) ................................................. 5, 7, 9, 11, 12, 13, 14, 15, 18

Collier's on Bankruptcy, Volume 1, 15th Edition .........................................................11

(iii)

APPENDIX

Table Of Contents

Page

1015 Half Street Corp. v. Warehouse Concepts, Inc., 99 Civ. 1174,
        1999 U.S. Dist. Lexis 19135 (D.D.C., Oct. 26, 1999) ....................................................... A-1


In re. Chicago, Missouri & Western Railway Co., 21 Bankr. Ct. Dec. 573,
        1991 Bankr. Lexis 710 (Bankr. N.D. Ill. Feb. 20, 1991).................................................... A-8

1188949/1

PRELIMINARY STATEMENT

This brief is submitted on behalf of Appellee, Judith Montilla, in opposition to the

appeal of Rexel, Inc. ("Rexel") from an order entered on March 4, 2004 by the United

States Bankruptcy Court for the District of Delaware (Honorable Peter J. Walsh, United

States Bankruptcy Judge).[1]

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Rexel is appealing from an order of the Bankruptcy Court that granted Appellee's

motion to remand a products liability and negligence action to the New York State Court

in which the action was originally commenced.[2]  The action was brought by Ms.

Montilla, a New York domiciliary, based upon an injury to her that occurred in New

York and that named as defendants (a) the debtor, Wilcox & Gibbs, Inc. ("WG"), (b)

Rexel, a New York corporation, and a third company, (c) Belle Knitting Mills, Inc., a

New York corporation doing business in Brooklyn, New York.[3]  Ms. Montilla consented

to limit her recovery against WG to the policy limits of the debtor's insurance and the

Bankruptcy Court held that the action should, therefore, be tried in New York State

Court.[4]  There have been no proceedings in the Bankruptcy Court related to the merits of

the products liability action, only Appellee's motion to remand, which was granted, and

Rexel's motion for reconsideration, which was denied.[5]

---

[1] Record Designation No. ("R. Des. No.") 42 and 43.
[2] R. Des. No. 27, §2; R. Des. No. 42.
[3] R. Des. No. 5, Exhibit C; R. Des. No. 27, Exhibit B.
[4] R. Des. Nos. 27, ¶¶1, 9; R. Des. No. 42.
[5] R. Des. No. 43, p. 6; R. Des. No. 54.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On April 20, 1999, WG and related entities filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code in the District of Delaware.[6]  The Chapter 11 proceeding was subsequently converted on April 9, 2002, to a case under Chapter 7 of the Bankruptcy Code.[7]

Unaware of any bankruptcy proceedings, on April 11, 2000, Ms. Montilla brought an action against WG in the Supreme Court of the State of New York, County of Kings.[8]  WG was the only named defendant and answered the complaint on June 27, 2000 without referring in any way to the existence of a bankruptcy proceeding.[9]  On or about September 15, 2000, Rexel was served with the third amended complaint in the action that additionally named both Rexel and Belle Knitting Mills, Inc. ("Belle"), Ms. Montilla's employer at the time of the accident, as defendants.[10]

As set forth in the third amended complaint, Ms. Montilla, a resident of Brooklyn, New York, was working for Belle, when she was injured by a defective sewing machine which bore the words "Willcox & Gibbs" and which was manufactured, designed, and/or distributed by WG or Rexel.[11]  Ms. Montilla alleged causes of action for strict products liability, breach of warranties, and negligence against WG and Rexel and spoliation against Belle for discarding the subject defective machine.[12]  The injuries for which Ms.

---

[6] R. Des. No. 42, p. 2
[7] R. Des. No. 39, Exhibit A, p. 1.
[8] R. Des. No. 15, ¶2 and Exhibit B; R. Des. No. 27, ¶5 and Exhibit F.
[9] R. Des. No. 27, Exhibit F.
[10] R. Des. No. 1, ¶1.
[11] R. Des. No. 5, ¶¶1, 7, 8, and 20.
[12] R. Des. No. 5.

Montilla sought recovery included partial amputation of the third and fourth fingers on her right hand.[13]

Rexel, on October 13, 2000, filed a notice of removal pursuant to 28 U.S.C § 1452(a) with the United States District Court for the Eastern District of New York.[14] Rexel asserted that issues in the State Court action were related to those in the bankruptcy proceedings[15]:

> Accordingly, removal of the State Court Lawsuit is authorized by 28 U.S.C. §1452(a) because the bankruptcy court has jurisdiction of this cause pursuant to 28 U.S. C. §1334. Issues raised in the State Court Lawsuit are "related to" the New Willcox and Gibbs and WG bankruptcy proceedings under 28 U.S. C. §1334. The State Court Lawsuit is a non-core proceeding as between Rexel and Plaintiff.

Upon removal, Rexel answered, asserted cross-claims against WG, and brought a third-party action against WG Apparel, Inc. alleging the existence of an agreement to indemnify it from any obligation arising from Appellee's injuries.[16] It also moved to transfer the venue of the action to the District of Delaware Bankruptcy Court.[17] Appellee opposed the motion to transfer.[18]

In addition, on December 4, 2000, Appellee moved to remand the action to the Supreme Court of the State of New York, County of Kings.[19] Rexel opposed the motion on grounds including that the motion to remand should be decided by the United States Bankruptcy Court for the District of Delaware, but did not object to the motion on the grounds of timeliness.[20] On January 9, 2001, the United States District Court for the

---

[13] R. Des. No. 7, Exhibit C.
[14] R. Des. No. 1; R. Des. No. 3, p. 1.
[15] R. Des. No. 1, ¶6.
[16] R. Des. No. 18, Exhibit B.
[17] R. Des. No. 2.
[18] R. Des. Nos. 5 and 10.
[19] R. Des. No. 7.
[20] R. Des. No. 11.

Eastern District of New York issued an order granting Rexel's motion to transfer venue

in part and denying Appellee's motion to remand the action without prejudice to renewal,

which provided in pertinent part that it was:

> ORDERED, that the motion to transfer venue to the District of
> Delaware Bankruptcy Court is granted to the extent that the case be and
> the same hereby is transferred to the United States District Court for the
> District of Delaware without prejudice to any party seeking transfer of this
> case to the District of Delaware Bankruptcy Court or remand to this court
> or to the New York State Supreme Court; and it is further
>
> ORDERED, that the motion to remand this case to the Supreme
> Court of the State of New York, County of Kings, be and the same hereby
> is in all respects denied without prejudice to renewal before the U.S.
> District Court for the District of Delaware or the District of Delaware
> Bankruptcy Court . . . .[21]

No time limits were contained in the order for a renewed motion to remand the action

from the District Court or the Bankruptcy Court in Delaware.

Rexel subsequently moved in this Court for an order referring the proceeding to

the United States Bankruptcy Court for the District of Delaware.[22]  Rexel and Ms.

Montilla entered into an agreed order providing for the referral of the action to the United

States Bankruptcy Court for the District of Delaware.[23]  The agreed order included a

provision that:

> IT IS THEREFORE ORDERED that this civil action and all pending
> motions are hereby referred to the United States Bankruptcy Court for the
> District of Delaware presiding over the bankruptcy proceedings of
> Willcox & Gibbs, Inc. (Case No. 99-928).  Notwithstanding the foregoing,
> the transfer of this civil action to the United States Bankruptcy Court for
> the District of Delaware is without prejudice to the Plaintiff's right to seek
> remand of this action to New York.

---

[21] R. Des. No. 19, p. 2.
[22] R. Des. No. 20.
[23] R. Des. No. 22

4

As with the January 9, 2001 order from the United States District Court for the Eastern District of New York to the District of Delaware, there was no provision in this agreed order governing the time within which the motion to remand was to be made.

On September 8, 2003, Appellee moved to remand the action back to the Supreme Court of the State of New York pursuant to 28 U.S.C. § 1452(b).[24]  Appellee agreed in an affidavit from counsel submitted in support of the motion that she would limit her recovery against WG to the policy limits of its applicable insurance coverage and not seek recovery against any other assets of the debtor's estate.[25]  In support of this motion, Appellee argued that trying the action in Delaware would make it virtually impossible for Appellee to prevail because of the inconvenience to witnesses and that the action should be remanded to the New York State Supreme Court because, among other reasons:

1.      Ms. Montilla was injured in Brooklyn, New York;

2.      all of the witnesses to the accident and the condition of the subject sewing machine, including certain identified co-workers, resided and worked in New York State;

3.      all of Ms. Montilla's medical treatment occurred in New York and it would be a great hardship, if not impossible, to require her treating orthopedic surgeon and other related medical personnel to appear at a trial in Delaware.[26]

Appellee also argued that remand would aid the efficient administration of the debtor's estate since it would remove from the Court's docket a products liability injury action involving solely issues of state law.[27]

---

[24] R. Des. No. 25.
[25] R. Des. No. 27, ¶¶1 and 9.
[26] R. Des. No. 27, ¶¶7-8 and 10.
[27] R. Des. No. 28, Point II and VI.

5

Rexel opposed the motion to remand, solely on the grounds of timeliness of the motion to remand made in the Bankruptcy Court and without either disputing on the merits Appellee's claims regarding the prejudice which would occur if the trial occurred in Delaware or asserting as a reason for denial of the motion its claim against WG for indemnification.[28]  Rexel claimed that 28 U.S.C. § 1447(c) required the motion to remand to be filed within 30 days after the notice of removal.[29]

By order dated March 4, 2004, United States Bankruptcy Judge Peter J. Walsh granted Appellee's motion and remanded the action to the Supreme Court of the State of New York, County of Kings.[30]  In his memorandum opinion, Judge Walsh rejected Rexel's claim that 28 U.S.C. § 1447(c) required Appellee's motion to remand to be made within a 30-day period:

> I find Rexel's reliance on the § 1447(c) 30 day period to be misplaced. Rexel fails to consider the orders issued by both the New York and Delaware District Courts.  As detailed above, both orders that caused the transfer of the case to this Court preserved Plaintiff's right to pursue its motion for remand.  Of particular note is that the Delaware District Court's order is an "agreed" order; Rexel's counsel agreed to the substance and form of the order that transferred the matter to this Court "without prejudice to the Plaintiff's right to seek remand of this action to New York."  (Doc. # 30.)  The rulings of the two District Courts effectively deferred to this Court the authority to address the remand issue at Plaintiff's election, without a time limit.  Stated differently, the effect of the two orders was to authorize this Court to treat Plaintiff's remand motion here as a continuation or renewal of the original remand motion filed in the New York District Court.  Rexel's reliance on the 30 day limitation period of § 1447(c) is simply inconsistent with the orders of the two District Courts.[31]

---

[28] R. Des. No. 31; R. Des. No. 42, p. 4.
[29] R. Des. No. 31.
[30] R. Des. No. 43.
[31] R. Des. No. 42, pp. 5-6.

6

The Bankruptcy Court also found that remand was consistent with the purpose of §

1447(c) because there was no evidence of Ms. Montilla seeking to remand the action as a

means to avoid unfavorable developments or of any improper conduct or forum shopping

on her part.[32]  The Bankruptcy Court also rejected Rexel's claim that the delay alone

warranted denial of the motion because Rexel failed to demonstrate the existence of

prejudice required to establish equitable laches.[33]

The Bankruptcy Court also analyzed the factors for equitable remand pursuant to

28 U.S.C. § 1452(b) as enumerated in Grace Community, Inc. v. KPMG Peat Marwick,

LLP (In re Grace Community, Inc.), 262 B. R. 625, 629 (Bankr. E.D. Pa. 2001).  Among

the factors cited by the Court for remanding the case to the New York State Court were

that the remand would not interfere with the administration of the estate, would in

actuality aid the bankruptcy court by eliminating the litigation from the court's

jurisdiction and make administration of the estate more efficient, and would prevent

prejudice to Appellee.[34]

Rexel made a motion to vacate the remand order and for reconsideration on

March 15, 2004.[35]  Rexel argued for the first time that it could not agree to pursue its

cross-claim only against the debtor's insurance and that its claim should be litigated in

this District to avoid "duplicitous proceedings."[36]  It also, among other grounds, disputed

for the first time the application of the factors set forth in Grace Community, Inc.  By

letter dated April 27, 2004, Judge Walsh stated his "disposition at this time to deny the

motion," explaining that his March 4, 2004 ruling did "not turn on whether Rexel has

---

[32] R. Des. No. 42, p. 6
[33] R. Des. No. 42, p. 6-7.
[34] R. Des. No. 42, pp. 7-8.
[35] R. Des. 44.
[36] R. Des. 44, p. 1 of Rexel's motion.

agreed to pursue its crossclaim only against Debtor's insurance" and that "Since Rexel is a defendant in the state court action, I do not know why its crossclaim against Debtor must be litigated in this District. In any event, if that crossclaim must be litigated in this District, so be it."[37] The Court also stated that "Plaintiff's motion papers and my memorandum opinion of March 4, 2004 set forth what I view as good reasons for remand."[38] Before issuing a final ruling, the Court requested a response from the Trustee as to his position on the motion.[39]

The Chapter 7 Trustee had previously executed a stipulation consenting to the remand (the consent of all parties to the stipulation was never obtained).[40] The Trustee had not served any papers on the motion for reconsideration although noticed with the motion papers.[41] In response to Judge Walsh's request for the Trustee's position, the Trustee suggested that the parties attempt to limit all recovery to insurance (which Rexel had not consented to do) and opposed remand on the ground that Rexel's indemnification claims would allegedly have to be litigated in the Bankruptcy Court.[42] Judge Walsh, after considering the Trustee's letter, stated that he was not persuaded by the Trustee's position, denied Rexel's motion for reconsideration for the reasons stated in his April 27, 2004 letter,[43] and issued an order to that effect.[44]

## SUMMARY OF ARGUMENT

Rexel's principal argument on this appeal is that the motion to remand was untimely because 28 U.S.C. § 1447(c) provides that motions to remand the case on the

---

[37] R. Des. No. 50, p. 2.
[38] R. Des. No. 50, p. 2.
[39] R. Des. No. 50, p. 3.
[40] R. Des. No. 39, Exhibit 1 to Exhibit A.
[41] R. Des. No. 50, p. 3.
[42] R. Des. No. 51.
[43] R. Des. No. 53.
[44] R. Des. No. 54.

8

basis of any defect other than lack of subject matter jurisdiction must be made within 30 days. In making this argument, it fails to consider that Appellee sought to remand this action on equitable grounds pursuant to 28 U.S.C. § 1452(b), not based on any procedural defect, and that there is no time limit in § 1452(b) for making the motion. Rexel relies upon the Supreme Court decision in Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 116 S. Ct. 494, 133 L. Ed.2d 461 (1995), but that case, which deals with the issue of appealability of a remand order, not the issue of timeliness pursuant to 28 U.S.C. § 1452(b), does not dictate a different result. Case law after the Things Remembered decision, never cited by Rexel, rejects the application of the 30-day period to motions to remand made pursuant to § 1452(b). Further, since neither the United States District Court for the Southern District of New York nor, this Court placed time limits on a motion for remand and there was no prejudice demonstrated by Rexel caused by the delay in making the motion, the motion to remand was not untimely.

Rexel's other arguments were raised for the first time in the Bankruptcy Court on the motion for reconsideration and should not be considered since they were not predicated upon an intervening change in controlling law, new evidence not available previously, or prevention of clear law or manifest injustice and, thus, not properly the subject of a motion for reconsideration. North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995); Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171, 106 S. Ct. 2895, 90 L. Ed.2d 982 (1986). In any event, the claim that Rexel's indemnification claim is a core proceeding - never supported by any case law cited by Rexel - is contrary to relevant case law. Even if the

9

indemnification claim were deemed to be a core proceeding, however, that would not bar its remand to New York State Court.

Rexel's argument that the proceeding "belongs in this Court" is refuted by the application of equitable considerations, as the Bankruptcy Court, in the exercise of its discretion, determined. Ms. Montilla is a New York resident, Rexel and Belle are New York corporations, the accident happened in New York, and Ms. Montilla was treated by physicians in New York. New York State products liability law applies. Maintaining the products liability action in Delaware would prevent Appellee from presenting live testimony from the relevant witnesses and treating physicians, thereby jeopardizing her ability to prevail. This is precisely the reason that Rexel opposes the remand. Moreover, as the Bankruptcy Court found, remand would aid the Bankruptcy Court by eliminating the litigation from the Court's jurisdiction and make administration of the estate more efficient. The Bankruptcy Court correctly ruled that this action should be remanded, and its order should be affirmed.

<u>ARGUMENT</u>

I.    <u>APPELLEE'S MOTION TO REMAND WAS TIMELY</u>

Rexel, relying upon 28 U.S.C. § 1447(c), argues that Appellee's motion to remand was untimely. In making this argument, Rexel ignores relevant precedent to the contrary and completely misconstrues the United States Supreme Court's decision in <u>Things Remembered, Inc. v. Petrarca</u>, 516 U.S. 124, 116 S. Ct. 494, 133 L. Ed.2d 461 (1995).

28 U.S.C. § 1447(c) provides in pertinent part that:

10

> A motion to remand the case on the basis of any defect other than lack of
> subject matter jurisdiction must be made within 30 days after the filing of
> the notice of removal under section 1446(a). If at any time before final
> judgment it appears that the district court lacks subject matter jurisdiction,
> the case shall be remanded.

Appellee's motion, however, was not made pursuant to this section and did not allege any

defect in removal procedure. She did not claim, for example, that the removal was

untimely. That section is thus totally inapplicable in the case at bar.

Appellee's motion was instead made pursuant to 28 U.S.C. § 1452(b).[45] The

subsection provides:

> The court to which such claim or cause of action is removed may remand
> such claim or cause of action on any equitable ground. An order entered
> under this subsection remanding a claim or cause of action, or a decision
> to not remand, is not reviewable by appeal or otherwise by the court of
> appeals under section 158(d), 1291, or 1292 of this title or by the Supreme
> Court of the United States under section 1254 of this title.

The provision contains no time limits for the making of a motion for a remand. Collier's

on Bankruptcy specifically notes, "Although neither section 1452(b) nor rule 9027

contains a time limit within which a motion to remand must be made, 28 U.S. C. § 1447

does. Consequently, a motion to remand under section 1452(b) made outside the 30-day

period of section 1447 can still be timely." Colliers, Vol. 1, 15th Edition at 3-94, n. 30.

Case law supports this conclusion. In Billington v. Winograde (In re Hotel Mt.

Lassen, Inc.), 207 B. R. 935, 939 (Bankr. E.D. Ca. 1997), the Court held that the remand

procedure set forth in 28 U.S. C. § 1447(c) did not preempt the different remand

procedure set forth in 28 U.S. C. § 1452(b). The Court stated that "There being no

specified deadline, any motion to remand under 28 U.S. C. § 1452(b) and rule 9027(d) is

timely." The timing of the motion was merely one of the equitable factors relevant to

---

[45] R. Des. Nos. 7 and 25.

remand. Id. (The Bankruptcy Court here considered it as an equitable factor and found it not determinative because there had been no prejudice, improper conduct or forum shopping.[46])

In Unico Holdings, Inc. v. Nutramax Products, Inc., 264 B. R. 779, 786 (Bankr. S.D. Fla. 2001), the Court, citing Billington, similarly held that remand motions made pursuant to 28 U.S. C. § 1452(b) after the expiration of the 30-day period contained in 28 U.S. C. § 1447(c) were timely.  The Court in Texas Gulf Trawling Co., Inc. v. RCA Trawlers & Supply, Inc. (In re Ciclon Negro, Inc.), 260 B. R. 832 (Bankr. S.D. Texas 2001) stated its agreement with the Billington decision and held that 28 U.S. C. § 1447 (c) does not preempt 28 U.S. C. § 1452(b).  Since the Court`s decision was based upon principles of equity, not any procedural defect, the Court found the 30-day limitation in 28 U.S. C. § 1447(c) to be inapplicable.

Lacking any authority supporting its position which addresses the applicability of the 30-day period to remands sought pursuant to 28 U.S. C. § 1452(b), Rexel cites to Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 116 S. Ct. 494, 133 L. Ed.2d 461 (1995).  In that case, decided before the cases cited above, the petitioner filed notices of removal pursuant to 28 U.S. C. § 1441, the general removal statute, and 28 U.S. C. § 1452(b).  The District Court remanded the case to the state court based upon grounds of untimely removal and the Court of Appeals held that it lacked jurisdiction to hear the appeal.

In ruling on the appealability of the remand order, the Supreme Court in Things Remembered cited to the general statutory provision governing reviewability, 28 U.S.C. § 1447(d), which provides that an order remanding a case to the State Court from which

---

[46] R. Des. No. 42, p. 6

12

it was removed is not reviewable (except for remands pursuant to 28 U.S.C. § 1443 relating to Civil Rights cases).  The Supreme Court  held that if an order remands a removed case to a state court based upon a defect in removal procedure which is timely raised or upon lack of jurisdiction (the grounds for remand set forth in 28 U.S.C. § 1447(c)), the Court of Appeals lacked jurisdiction pursuant to 28 U.S.C. § 1447(d) to review the order, irrespective of whether the removal was effected under 28 U.S. C. § 1441(a) (the general removal section) or § 1452(a) (the section governing removal of claims related to bankruptcy cases).  <u>Things Remembered</u>, 516 U.S. at 128-129.  The Court explained that:

> There is no express indication in § 1452 that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy.  Nor is there any reason to infer from § 1447(d) that Congress intended to exclude bankruptcy cases from its coverage.  The fact that § 1452 contains its own provision governing certain types of remands in bankruptcy, <u>see</u> § 1452(b) (authorizing remand on "any equitable ground" and precluding appellate review of any decision to remand or not to remand on this basis), does not change our conclusion.  There is no reason §§ 1447(d) and 1452 cannot comfortably coexist in the bankruptcy context.

<u>Id.</u> at 129.

The Supreme Court's holding in <u>Things Remembered</u> is irrelevant to the determination of whether the 30-day period set forth in 28 U.S.C. § 1447(c) is applicable to a motion to remand made on equitable grounds pursuant to 28 U.S.C. § 1452(b). <u>Things Remembered</u> involved the issue of the appealability of a remand order pursuant to § 1447(d) where the remand resulted from the grounds set forth in § 1447(c) - either a defect in removal procedure raised within the 30-day period or lack of jurisdiction.  The issue here, however, is timeliness, not appealability.  Moreover, the Supreme Court limited appealability of cases under § 1452(a) only to the extent that § 1447(c) applied –

13

where remand resulted from procedural defects or lack of jurisdiction. 28 U.S.C. §

1452(b) governs remands on equitable grounds and involves grounds far more broad than

just procedural defects or lack of jurisdiction (for which § 1447(c) explicitly states that

there are no applicable time limits before final judgment). There is nothing in the

Court's opinion that would require the imposition of a rigid 30-day rule designed to limit

objections on the basis of procedural defects to a provision designed to allow remands for

equitable reasons; the two do not "comfortably coexist."

The decision in Things Remembered was distinguished by the Court in Billington

v. Winograde (In re Hotel Mt. Lassen, Inc.), 207 B.R. at 939, in ruling that the 30-day

period of 28 U.S.C. § 1447(c) was inapplicable to remands sought pursuant to 28 U.S.C.

§ 1452(b):

> That decision, which holds that § 1447(c) and § 1452(b) can "comfortably
> coexist in the bankruptcy context", means that § 1447(c) can be applied to
> bankruptcy removals and remands instead of (or to fill gaps in) § 1452(b)
> and its implementing rules when: (1) the preconditions of § 1447 are
> satisfied; and (2) doing so would not be inconsistent with § 1452(b).
> Things Remembered, ___ U.S. at ___, 116 S. Ct. at 497.

> The principle of comfortable coexistence for § 1447(c) and § 1452(b)
> requires that the procedures of § 1452(b), as implemented by Federal rule
> of Bankruptcy Procedure 9027, be given effect. The imposition of §
> 1447(c)'s strict 30-day deadline for challenging procedural defects would
> be uncomfortably inconsistent with the liberal, "any equitable ground"
> approach to bankruptcy remands. Hence, § 1447(c) does not preempt
> § 1452(b).

See also Texas Gulf Trawling Co., Inc. v. RCA Trawlers & Supply, Inc. (In re Ciclon

Negro, Inc.), 260 B. R. at 836-837, which discusses and rejects the argument that Things

Remembered would result in the time limits of § 1447(c) being found applicable to

remands pursuant to § 1452(b).

14

Rexel also relies on <u>In re Asbestos Litigation</u>, 01 Civ. 1790, 2002 U.S. Dist. Lexis 3083 (D. Or. Feb. 1, 2002), an unreported case annexed to its brief. That case is also irrelevant to the issue of the applicability of the 30 day period of 28 U.S.C. § 1447(c) to remands pursuant to § 1452(b). That case analyzed whether removal - not remand - was proper when not made within the time limits set forth in 28 U.S.C. § 1446(b), which requires filing of a notice of removal within 30 days after receiving an amended pleading demonstrating that the case has become removable.

Moreover, even assuming, <u>arguendo</u>, that the time periods contained in § 1447(c) were deemed applicable, those time limits were waived. Rexel never raised the issue of the timeliness of the original remand motion until the motion for reconsideration, and the Court should therefore not consider it on this appeal. Further, as the Bankruptcy Court properly held, the orders of the United States District Court for the Southern District of New York and of this Court effectively preserved Appellee's right to seek remand without imposing time requirements for doing so.[47] Rexel agreed to the order of this Court which found that the action would be transferred to the Bankruptcy Court "without prejudice to the Plaintiff's right to seek remand of this action to New York." As the Court held in <u>Student A. v. Metcho</u>, 710 F. Supp. 267, 269 (N.D. Cal. 1989),

> Defendants did not raise the objection of untimeliness. Because that objection does not go to subject matter jurisdiction it is waivable. <u>Mackay v. Uinta Dev. Co.</u>, 229 U.S. 173, 176-77, 57 L. Ed. 1138, 33 S. Ct. 638 (1913). While it might be argued that plaintiff should be held to the statutory time constraints as strictly as the removing defendants, there is a well-settled presumption in favor of remand.

<u>See also</u> <u>1015 Half Street Corp. v. Warehouse Concepts, Inc.</u>, 99 Civ. 1174, 1999 U.S. Dist. Lexis 19135 (D.D.C., Oct. 26, 1999) (annexed hereto), at *12-*13, in which the

---

[47] R. Des. No. 42, pp. 5-6.

Court held that because the defendant had not objected to the untimeliness of the remand motion, the Court would not base its decision on untimeliness. Both Student A. and 1015 Half Street Corp. were cited by the Bankruptcy Court in support of its decision.

In re Shell Oil Co., 932 F.2d 1523 (5th Cir. 1991), also cited by the Bankruptcy Court as holding contrary to Student A. and 1015 Half Street Corp., the Court ruled on plaintiffs' argument that defendants waived their objection to the timeliness of the remand motion by not raising it until their third supplement to the motion for reconsideration. The Court held that under the particular facts of that case, no waiver would be found (932 F.2d at 1528):

> Under the circumstances of this case, we decline to hold that they did so [waived timeliness objections]. Although the defendants did not assert the 30-day rule until five months after the remand order, they nevertheless gave the district court an opportunity to consider their argument prior to its decision on the motion for reconsideration . . . . In addition, Congress' clear intent to avoid the burdens of shuffling a case between two courts that each have subject matter jurisdiction, and to discourage holding defects in removal procedure in reserve as a means for forum shopping, would not be advanced by accepting the waiver argument.

Shell Oil, 932 F.2d at 1528 (emphasis added). The Court specifically noted in its opinion that "the plaintiffs' delay in seeking remand was apparently motivated by forum shopping concerns." Id. at 1528.

Unlike in In re Shell Oil Co., Rexel did not raise objections to timeliness in the United States District Court for the Southern District of New York or in this Court. To the contrary, they agreed that the motion to remand could be heard by the Bankruptcy Court. In addition, as the Bankruptcy Court found, there is no evidence that the untimeliness was the result of forum-shopping.[48] Finally, this is not a case in which

---

[48] R. Des. No. 42, p. 6.

defects in procedure were held in reserve and asserted as the basis for remand. Thus, the decision in In re Shell Oil Co. does not dictate a contrary result here.

Further, there is no time limit for objecting to the jurisdiction of the Court. 28 U.S.C. § 1447(c) provides that "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Appellee had consented before removal to this Court to pursuing only the insurance policy of WG, not its assets.[49] As such, Appellee's claim did not relate to the bankrupt's estate because it would not have an effect on the estate. See Celotex Corp. v. Edwards, 514 U.S. 300, 308, n. 6, 115 S. Ct. 1493, 1499, 131 L. E.2d 403, 411 (1995), in which the Court held that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." Since no diversity of jurisdiction exists, subject matter jurisdiction in the federal courts is lacking, and the 30-day period set forth in 28 U.S.C. § 1447(c) is not applicable. Rexel's claim that the motion to remand was untimely is thus baseless.

## II. THE BANKRUPTCY COURT DID NOT PUT THE BURDEN OF PROOF ON THE WRONG PARTY

Rexel claims (Opening Brief at 9) that the Bankruptcy Court erroneously placed the burden of proof on the wrong party with respect to the timeliness issue by considering Rexel's argument as one premised on common law laches and requiring proof of prejudice from Rexel. According to Rexel, it did not argue laches, but instead argued that by failing to file within 30 days, Appellee was barred by statute and that Appellee had to justify remand outside the statutory period. Rexel's argument is ill-founded.

First, the Bankruptcy Court placed the burden on Appellee, not Rexel, as claimed. The Court evaluated the factors set forth in Grace Community, Inc. v. KPMG Peat

---

[49] R. Des. No. 7, ¶1; R. Des. No. 8, p. 6.

Marwick, LLP (In re Grace Community, Inc.) and determined that Appellee had met its

burden. In fact, on the original motion, Rexel did not even dispute that application of the

Grace Community favors favored Appellee or that they warranted remand. With respect

to the issue of the 30-day period, Appellee did not have to justify remand outside the

statutory period because, as set forth above, there is no such statutory period applicable to

remands pursuant to 28 U.S.C. § 1452(b). Moreover, as the Court found, by application

of the two District Court orders, the second one which was agreed to by Rexel, there was

no time limit for the motion.

> With respect to the delay in making the motion, the Bankruptcy Court considered

this in its analysis of the equitable factors under 28 U.S.C. § 1452(b). However, as an

equitable factor, delay is only significant if it causes prejudice. See, e.g., Western

Properties Service Corp. v. Shell Oil Co., 358 F.3d 678, 693 (9th Cir. 2004) (whether

delay in filing suit prejudiced defendant's ability to defend itself is equitable

consideration in determining whether to permit case to proceed); Borden v. Sinskey, 530

F.2d 478, 488 (3d Cir. 1976) (noting that equitable doctrine of laches provides defense to

cause of action when  plaintiff unreasonably delays in bringing suit after learning of

claims, and delay results in prejudice to defendant). Rexel could not demonstrate the

existence of prejudice. As such, the Court properly did not deny remand on this basis.

III.    THE NATURE OF THIS PROCEEDING AND THE
        RIGHT TO REMAND IT TO STATE COURT
        IRRESPECTIVE OF WHETHER IT IS CORE OR NON-CORE

> Rexel claims (Opening Brief at 10) that the case involves an indemnity claim

against the debtor's estate that is a core proceeding because it involves an administrative

claim for legal fees and damages in defense of the adversary proceeding.[50] The assertion

that this is a core proceeding is contrary to Rexel's position in its notice of removal that

the action was related to the bankruptcy proceeding, not core.[51] It is also contrary to the

Court's ruling in In re Chicago, Missouri & Western Railway Co., 21 Bankr. Ct. Dec.

573, 1999 Bankr. Lexis 710 (Bankr. N.D. Ill. Feb. 20, 1991) at 12 (annexed hereto), in

which the Court explained the issue before the Court as follows: "whether a co-

defendant has an administrative claim against a debtor based on statutory contribution for

a post-petition accident." The Court further noted that, "In two opinions dated November

7, 1990, this court disallowed administrative status to claims of BOCTC and IHB for

indemnification, contribution, and subrogation" and that "The same factors which led the

court to deny administrative priority in the IHB and BOCTC opinions are applicable here,

and compel the denial of Alsip's administrative claim." Id. at *12-*13. According to the

Court, for a claim to be afforded administrative priority, it must both arise from a

transaction with the debtor-in-possession and benefit the debtor-in-possession in the

operation of its post-petition business. Id. at *13. However, here the indemnification

agreement relied upon by Rexel pre-existed the bankruptcy filing and there is no benefit

to WG in connection with any post-petition business justifying administrative priority.

Thus, Rexel's claim is not core. See also In re Federal-Mogul Global, Inc., 282 B. R.

301, 313 (D. Del. 2002), mandamus denied, 300 F.3d 368 (3d Cir. 2002), cert. denied,

Daimler Chrysler Corp. v. Official Committee of Asbestos Claimants, 537 U.S. 1148,

123 S. Ct. 884, 154 L.Ed.2d 851 (2003), in which indemnification agreements are

discussed as, at most, non-core proceedings.

---

[50] Moreover, it is an issue which was not asserted until reconsideration and thus is not properly asserted on appeal.
[51] R. Des. No. 1, ¶6.

Further, irrespective of whether the claim is core, it can be remanded to the state court. See, Chickaway v. Bank One Dayton, N.A., 261 B. R. 646 (S.D. Miss. 2001), in which the Court explained:

> Of course, the conclusion that this is a core proceeding is ultimately not necessarily determinative of whether this case should be remanded, for from the conclusion that this is a core proceeding it follows only that mandatory abstention does not apply and the court is thus not required to abstain; the court still may find that it ought to abstain and remand the case pursuant to 28 U.S.C. § 1334(c)(1) . . . or that remand is appropriate pursuant to 28 U.S.C. § 1452(b), which provides for remand "on any equitable ground."

In Broyles v. U.S. Gypsum Co., 266 B.R. 778, 785 (E. D. Texas 2001), the Court held that "a federal district court or bankruptcy court may find that remand is appropriate in a case removed on bankruptcy grounds whether it is 'core' or 'non-core' if there is any equitable ground for doing so." As discussed in the Bankruptcy Court's order, the equitable factors warranted remand and the classification of the proceeding is irrelevant.

## IV.  THIS PRODUCTS LIABILITY ACTION BELONGS IN THE NEW YORK SUPREME COURT FOR KINGS COUNTY

Although not even disputing the application of the Grace Community, Inc. v. KPMG Peat Marwick, LLP (In re Grace Community, Inc.) factors until the motion for reconsideration, Rexel now claims that they warrant having the case remain in Delaware. Clearly, the Bankruptcy Court's weighing of the equities here was not an abuse of discretion, the standard recognized by Rexel in Opening Brief at 1, Section IV, for determinations made by the Bankruptcy Court in the exercise of its discretion, citing to In re Trans World Airlines, Inc., 145 F.3d 124, 131 (3d Cir. 1998).

Further, the Bankruptcy Court correctly determined that equity required the litigation to return to New York State Court. As the Court found in its decision

20

determining that the case should be remanded, the action is one for personal injuries and Appellee's agreement to only recover against the debtor's insurance policies means that the administration of the bankruptcy estate would be aided, not adversely affected.[52]

The existence of Rexel's cross-claim for indemnification does not warrant a different result. As stated by the Bankruptcy Court, "Since Rexel is a defendant in the state court action, I do not know why its crossclaim against Debtor must be litigated in this District. In any event, if that crossclaim must be litigated in this District, so be it."[53] It is far easier resolving any such limited issues regarding Rexel's right to recover under an indemnification agreement than requiring the District Court in Delaware to resolve a personal injury case properly venued in New York. New York State law is applicable, comity supports remand, and the personal injury action is unrelated to the Bankruptcy proceeding. Although Rexel has claimed that duplicative trials would be required, there is no basis for concluding that the entirely separate issues cannot be resolved without duplicative efforts. In addition, indemnification, usually a legal issue, can typically be decided without a trial.

Most significantly, however, Appellee would suffer extreme prejudice if the trial took place in Delaware rather than New York where she, Rexel, another defendant, and the material witnesses and experts are located. An effective presentation cannot be made by reading into evidence deposition testimony from the key witnesses in the case as Rexel proposes in its brief at 12, including from treating physicians and co-workers from Appellee's place of employment. Appellee's ability to prove her case and to obtain a full recovery for her damages would be adversely affected, the real reason Rexel, a New York

---

[52] R. Des. No. 42 at 7-8.
[53] R. Des. No. 50, p. 2.

21

1188948/2

corporation, seeks to keep the litigation in Delaware. Rexel has provided no valid reasons to justify such prejudice to Appellee.

CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court deny the appeal of Rexel, Inc., remand the action to the Supreme Court, Kings County, and award Appellee the costs and disbursements of this appeal.

Respectfully,

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

_____

Carl N. Kunz, III (DE No. 3201)
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE 19899
Telephone:    (302) 888-6800
Facsimile:    (302) 571-1750


  -and-

TRIEF & OLK
Barbara E. Olk
150 East 58th Street, 34th Floor
New York, New York 10155
Telephone:    (212) 486-6060
Facsimile:    (212) 317-2946

Attorneys for Plaintiff, Judith Montilla

22

*1999 U.S. Dist. LEXIS 19135, \**

1015 HALF STREET CORPORATION, Plaintiff, v. WAREHOUSE CONCEPTS, INC., Defendant.

Civil Action No. 99-1174 SSH

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

1999 U.S. Dist. LEXIS 19135

October 26, 1999, Decided
October 26, 1999, Filed

**DISPOSITION:** **[\*1]** Plaintiff's motion to remand denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff filed a motion to remand this action back to District of Columbia court pursuant to 28 U.S.C.S. § 1447(c), contending that defendant's notice of removal was untimely. Plaintiff's suit alleged breach of contract and negligence.

**OVERVIEW:** Plaintiff sued defendant for breach of contract and negligence in District of Columbia court. Plaintiff served the Mayor's office pursuant to D.C. Code Ann. § 29-312 (b), which designated that office as an agent who could receive service of process for corporations that had not appointed a registered agent in the District of Columbia. Defendant filed a notice of removal and plaintiff moved to remand the action pursuant to 28 U.S.C.S. § 1447(c), contending that defendant's notice of removal was untimely. The court denied plaintiff's motion. The court held that 28 U.S.C.S. § 1446(b) (§ 1446(b)) provided that a notice of removal was timely if filed within 30 days after receipt by defendant of a copy of the complaint. The court also held that when service was effected on a statutory agent, as here, then § 1446(b) did not begin to run until defendant actually received a copy of the complaint.

**OUTCOME:** Plaintiff's motion to remand this action was denied. Court found that when service of process was effected on a statutory agent, as was the case here, then the statutory time period applicable to a notice of removal did not run until the defendant actually received a copy of the complaint.

**CORE TERMS:** removal, notice, registered, service of process, failure to comply, actually received, untimely, thirty-day, appoint, mail, begin to run, untimeliness, appointed, effected, summons, memorandum, praecipe, began to run, facsimile, reply, subject matter jurisdiction, principal place of business, date of service, majority view, appointment, inequitable, resident, waived, confer, See Local Rule

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Removal > Removal Proceedings 🖮
*HN1* 28 U.S.C.S. § 1446(b) provides that a notice of removal is timely if it is filed within

A–1

30 days after receipt by the defendant, through service or otherwise of a copy of the complaint. More Like This Headnote

Civil Procedure > Removal > Removal Proceedings
*HN2* When service is effected on a statutory agent, rather than on an agent appointed by the defendant, the time to remove the action to federal court does not start to run until the defendant actually has received a copy of the complaint. More Like This Headnote

Civil Procedure > Pleading & Practice > Service of Process
*HN3* D.C. Code Ann. § 29-399(e)(1) requires that a foreign corporation transacting business in the District of Columbia appoint and maintain a registered agent for service of process in the District of Columbia, as well as register the name and address of this agent and the address of its principal office with the Mayor. D.C. Code Ann. § 29-312(b) states that when a corporation fails to appoint a registered agent in the District of Columbia, the Mayor shall be an agent of the corporation upon whom process may be served. More Like This Headnote

Civil Procedure > Pleading & Practice > Service of Process
*HN4* The purpose of service of process is to supply notice that affords the defendant a fair opportunity to answer the complaint and present defenses and objections. More Like This Headnote

Civil Procedure > Pleading & Practice > Service of Process
*HN5* The penalties for failure to comply with D.C. Code Ann. § 29-399(e)(1) are provided in D.C. Code Ann. § 29-399(e)(4). More Like This Headnote

Civil Procedure > Removal > Postremoval Remands
*HN6* 28 U.S.C.S. § 1447(c) provides that a motion to remand on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 28 U.S.C.S. § 1446 (a). More Like This Headnote

Civil Procedure > Removal > Postremoval Remands
*HN7* Because untimely removal is a procedural defect and not jurisdictional, pursuant to 28 U.S.C.S. § 1447(c), a motion to remand based on untimely removal must be filed within 30 days after the case is removed. More Like This Headnote

Civil Procedure > Removal > Postremoval Remands
*HN8* Fed. R. Civ. P. 6(e) does not extend the thirty-day period pertaining to a motion to remand that is provided by 28 U.S.C.S. § 1447(c). Fed. R. Civ. P. 6(e) applies only when a party is required to act within a prescribed period after service, not after filing. More Like This Headnote

**COUNSEL:** FOR PLAINTIFF(S): James F. Lee, Jr., Esq., James P. Bobotek, Esq., Washington, DC.

FOR DEFENDANT(S): Charles M. Asmar, Esq., Eric J. Darden, Esq., McManus, Schor, Asmar & Darden, Washington, DC.

**JUDGES:** Stanley S. Harris, United States District Judge.

**OPINIONBY:** Stanley S. Harris

A-2

## OPINION: MEMORANDUM ORDER

Before the Court is plaintiff's motion to remand, defendant's opposition thereto, and plaintiff's reply. Also before the Court is defendant's "praecipe." n1 Upon consideration of these submissions, as well as the entire record herein, plaintiff's motion is denied. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n1 Defendant filed what it labeled a "praecipe," informing the Court of several inaccuracies in plaintiff's reply brief. The Court considers defendant's submission to be a surreply, rather than a praecipe. See Black's Law Dictionary 1055-56 (5th ed. 1979) (defining "praecipe" as, inter alia, "an order, written out and signed, addressed to the clerk of a court, and requesting him to issue a particular writ"). Because defendant's surreply points out several glaring inaccuracies and highly misleading statements in plaintiff's reply, the Court accepts the submission. However, the Court notes that, in the future, defendant must first obtain leave of Court before filing a sur-reply. See Local Rule 108 (providing for only a memorandum in support of a motion, a memorandum in opposition, and a reply memorandum). **[*2]**


n2 Defendant requests that the Court dismiss the motion because plaintiff did not confer with defendant before filing it, as required by Local Rule 108(m). Plaintiff claims that it had no duty to confer with defendant under Rule 108(m), as a motion to remand is a dispositive motion. The majority view is that a motion to remand is a non-dispositive motion. See, e.g., Young v. James, 168 F.R.D. 24 (E.D. Va. 1996). In the absence of binding precedent to the contrary, the Court will consider the motion despite the non-compliance with Rule 108(m).


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## BACKGROUND

On March 26, 1999, plaintiff 1015 Half Street Corporation ("Half Street") commenced an action against defendant Warehouse Concepts, Inc. ("WCI") in the Superior Court of the District of Columbia. Half Street, a District of Columbia corporation with its principal place of business in the District of Columbia, asserted breach of contract and negligence counts against WCI, a Maryland corporation with its principal place of business in Maryland. Because WCI had not appointed a registered agent in the District of Columbia, Half **[*3]** Street served the complaint and summons on Mayor Williams's office on May 29, 1999. See D.C. Code § 29-312 (b) (designating the Mayor as an agent who may receive service of process for corporations that have not appointed a registered agent in the District of Columbia). Half Street also attempted to serve WCI's resident agent in Maryland, but that attempt failed. n3 Although Half Street knew WCI's business address and the names of its corporate officers, it made no attempt to mail a copy to that address or to serve the complaint and summons on WCI's officers. Similarly, although Half Street knew the name of the attorney representing WCI in this matter, it did not provide that attorney with a courtesy copy of the complaint nor ask whether counsel would accept service. Half Street served Mayor Williams's office on March 29, 1999. The District of Columbia did not mail a copy of the complaint and summons to WCI until May 14, 1999. The first date on which WCI actually received a copy of the complaint was April 15, 1999, when Half Street's attorney sent a facsimile copy of it to WCI's attorney. WCI filed a notice of removal pursuant to 28 U.S.C. § 1441(b) on May 14, 1999. Half **[*4]** Street filed its motion to remand this action to the Superior Court for the District of Columbia on June 16, 1999.


- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Half Street mailed a copy of the complaint and summons, via certified mail, return receipt requested, to the address for WCI's resident agent in Maryland provided by the Maryland State Department of Assessments and Taxation. The package was returned by the Postal Service as unclaimed.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## ANALYSIS

Plaintiff moves to remand this action pursuant 28 U.S.C. § 1447(c), claiming that defendant's notice of removal was untimely. Defendant opposes remand and claims that its notice of removal was timely. *HN1* Title 28 U.S.C. § 1446(b) provides that a notice of removal is timely if it is filed within 30 days "after receipt by the defendant, through service or otherwise" of a copy of the complaint. The parties disagree on when the thirty-day time period for removal began to run in this case. Plaintiff argues that the time for removal began to run on the date Half **[*5]** Street served Mayor Williams's office and therefore that defendant's notice of removal was untimely. Defendant argues that the time for removal did not begin to run until the date it actually received a copy of the complaint and therefore that its notice of removal was timely.

Plaintiff essentially makes two arguments in support of its claim that defendant's time to seek removal began to run from March 29, 1999, the date of service on the Mayor. Plaintiff first argues that WCI's failure to comply with D.C. Code § 29-399(e)(1) and appoint a registered agent for service of process in the District of Columbia constituted a voluntary appointment of Mayor Williams as their registered agent. Thus, the date of service on the Mayor, as WCI's "appointed" agent, marked the start of defendant's time to remove the action. Plaintiff adds that it would be inequitable for WCI to benefit from its failure to comply with D.C. law. Plaintiff's second argument is that, even if Mayor Williams is considered only WCI's statutory agent, rather than its actual agent, a statutory agent, rather than its actual agent, a statutory agent's receipt of process starts the thirty-day removal period. In response, **[*6]** defendant argues that Mayor Williams was merely its statutory agent and that, when service is effected on a statutory agent, the time for removal does not begin to run until the defendant actually has received a copy of the complaint. Thus, its time for removal did not begin to run until April 15, 1999, when its attorney received a copy of the complaint by facsimile.

Almost every court that has recently addressed the issue has held that *HN2* when service is effected on a statutory agent, rather than on an agent appointed by the defendant, the time to remove the action to federal court does not start to run until the defendant actually has received a copy of the complaint. n4 See Monterey Mushrooms, Inc. v. Hall, 14 F. Supp. 2d 988, 991 (S.D. Tex. 1998) (holding that, where service was properly made on a statutory agent, the removal period began when defendant actually received the process, not when the statutory agent received it); Wilbert v. Unum Life Ins. Co., 981 F. Supp. 61, 63 (D.R.I. 1997) ("When a statutory agent is served, the clock for removal does not begin ticking as it would if defendant itself had been served but rather starts when defendant **[*7]** receives actual notice of the service from the statutory agent."); Pilot Trading Co. v. Hartford Ins. Group, 946 F. Supp. 834, 839 (D. Nev. 1996) (holding that, where service is effected through a statutory agent, the time for removal starts running at the time of defendant's actual receipt of the complaint); Medina v. Wal-Mart Stores, Inc., 945 F. Supp. 519, 520 (W.D.N.Y. 1996) (noting that "the time for removal, in cases in which service is made on a statutory agent, runs from receipt of the pleading by the defendant rather than the statutory agent.'") (quoting Cygielman v. Cunard Line, Ltd., 890 F. Supp. 305, 307 (S.D.N.Y. 1995)); Taphouse v. Home Ins. Co., 885 F. Supp. 158, 161 (E.D. Mich. 1995) (holding that the time limit for removal does not begin with service on a statutory agent, but when the defendant actually receives the

A-4

pleading); Skidaway Assocs., Ltd. v. Glens Falls Ins. Co., 738 F. Supp. 980, 982 (D.S.C. 1990) ("The law appears to be settled that service on a statutory agent . . . does not start the running of the removal statute time limitation period as would service on the defendant [*8] or an agent designated by the defendant."). Plaintiff cites only one decision issued within the last four decades that supports its argument that service on a statutory agent starts the thirty-day period for removal, even when the defendant has not yet actually received a copy of the complaint. n5 See Bodden v. Union Oil Co., 82 F. Supp. 2d 584, 1998 U.S. Dist. LEXIS 2117, 1998 WL 88048, *3 (E.D. La.). But see Fidelity Funding, Inc. v. Pollution Research & Control Corp., 1999 U.S. Dist. LEXIS 215, 1999 WL 20955, *2 (N.D. Tex.) (disagreeing with Bodden and noting that it is contrary to the great weight of authority). The Court is persuaded by the reasoning in the cases following the majority view and finds that, where service of process is effected on a statutory agent, the time for removal does not begin to run until the defendant has actually received a copy of the process. Accordingly, if Mayor Williams is considered to be WCI's statutory agent, defendant's notice of removal was timely.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 A few courts have taken a somewhat different approach, holding that the time for removal begins on the date the statutory agent mails the complaint to the defendant. See, e.g., Masters v. Nationwide Mutual Fire Ins. Co., 858 F. Supp. 1184, 1186 (M.D. Fla. 1994). [*9]


n5 Plaintiff cites two other decisions issued after the 1950s in support of this proposition; however, those cases do not support plaintiff's argument.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiff claims that Mayor Williams was not merely a statutory agent in this case, but WCI's actual agent. HN3 Section 29-399(e)(1) of the D.C. Code requires that a foreign corporation transacting business in the District of Columbia appoint and maintain a registered agent for service of process in the District, as well as register the name and address of this agent and the address of its principal office with the Mayor. Section 29-312(b) states that when a corporation fails to appoint a registered agent in the District, the Mayor shall be an agent of the corporation upon whom process may be served. See also D.C. Code § 29-399(e)(2). As discussed above, plaintiff claims that, by failing to appoint a registered agent in the District of Columbia as required by the D.C. Code, WCI voluntarily "chose" the Mayor as its agent to receive service of process. The Court disagrees with plaintiff's argument that WCI's inaction constituted a "choice" of Mayor [*10] Williams as their actual agent. At no point did WCI affirmatively appoint the Mayor to be its designated agent. Rather, the agency relationship between WCI and the Mayor was created by D.C. Code § 29-312(b). As the Mayor became WCI's agent for service of process in the District quite literally by operation of a statute, it plainly follows that he should be considered a statutory agent. Accordingly, defendant's notice of removal was timely.

The Court also rejects plaintiff's argument that it would be inequitable for WCI to benefit from its failure to comply with D.C. law. The Court's decision does not confer a benefit on WCI; it provides defendant with nothing more than the thirty-day removal period allowed by § 1446 (b). Nor does the Court's decision lead to an inequitable result. By contrast, it is plaintiff's approach that would lead to an unjust result in this case. HN4 The purpose of service is "to supply notice . . . that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." Pilot Trading Co., 946 F. Supp. at 838 (quoting Henderson v. United States, 517 U.S. 654, 116 S. Ct. 1638, 1648, 134 L. Ed. 2d 880 (1996)). In this case, defendant [*11] did not receive notice until it received a facsimile copy of the

complaint on April 15, 1999. According to plaintiff's approach, defendant's failure to comply with § 29-399(e)(1) should reduce its time to remove the case to only 15 days. Moreover, the District of Columbia did not mail the complaint to WCI until May 14, 1999. If WCI had received the complaint only through the District, then according to plaintiff, WCI would not have been able to remove the case at all, as the time for removal would have already passed by the time the complaint arrived in the mail. Plaintiff provides no authority to support its argument that a defendant's failure to comply with a state law requiring the appointment of a registered agent for service of process should lead to the forfeiture of its right under federal law to remove a case to federal court. n6

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n6 To the extent that WCI should be penalized for its failure to comply with D.C. law, remand of this case to the Superior Court would not be the appropriate sanction. *HN5*The penalties for failure to comply with § 29-399(e)(1) are provided in § 29-399(e)(4).

- - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*12]**

Finally, the Court notes that plaintiff's motion to remand is itself untimely. *HN6*Title 28 U.S.C. § 1447(c) provides that a motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." As the basis of plaintiff's motion to remand is untimeliness, not lack of subject matter jurisdiction, its motion to remand was due no later than 30 days after May 14, 1999, the date defendant's notice of removal was filed. See Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 118 S. Ct. 2047, 2054, 141 L. Ed. 2d 364 (1998) (noting that a motion to remand based on a defect in removal procedure such as untimeliness must be filed no later than 30 days after the filing of the removal notice); Maniar v. FDIC, 979 F.2d 782, 784-785 (9th Cir. 1992) (holding that, *HN7*because untimely removal is a procedural defect and not jurisdictional, a motion to remand based on untimely removal must be filed within 30 days after the case is removed). Plaintiff's motion to remand was not filed until June 16, 1999, 33 days after defendant filed its notice of removal. n7 However, **[*13]** because defendant has not objected to the untimeliness of plaintiff's motion, the Court's decision is not based on it. See **Student A. v. Metcho**, 710 F. Supp. 267, 269 (N.D. Cal. 1989) (remanding the action to state court even though the motion to remand was untimely where the defendants did not raise the objection of untimeliness, and therefore waived it). But see In re Shell Oil Co., 932 F.2d 1523, 1529 (5th Cir. 1991) (concluding that defendants had not waived their objection to the timeliness of plaintiffs' motion for remand where defendants did not raise the issue until five months after the remand order in a motion for reconsideration).

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n7 *HN8*Federal Rule of Civil Procedure 6(e) does not extend the thirty-day period provided by § 1447(c). See Pavone v. Mississippi Riverboat Amusement Corp., 52 F.3d 560, 566 (5th Cir. 1995). Rule 6(e) applies only when a party is required to act within a prescribed period after service, not after filing. See id.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

In sum, **[*14]** because plaintiff served process on a statutory agent, defendant's motion to remand was not due until May 15, 1999, 30 days after defendant actually received a copy of

A-6

the complaint. Thus, defendant's notice of removal, filed on May 14, 1999, was timely. Accordingly, it hereby is

ORDERED, that plaintiff's motion to remand is denied. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 Buried in the "wherefore clause" of its opposition, defendant included a request that the Court "examine the nature of the relationship between Plaintiff's counsel and WCI and determine if a conflict of interest exists." If defendant would like the Court to consider such a request, it must, after conferring with plaintiff, file a proper motion and accompanying memorandum providing specific points of law and authority in support of the motion. See Local Rule 108(a) & (m).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

SO ORDERED.

Stanley S. Harris

United States District Judge

Date: OCT 26 1999

Source: Legal > Cases - U.S. > Federal Court Cases, Combined 🔍
Terms: [(260 832) and ciclon or texas gulf] or ("hotel mt. lassen" and 207 w/5 935) or (1015 hall and warehouse concepts) or (student a. and metcho) or (banruptcy and federal-mogul and 282 and 301)  (Edit Search)
View: Full
Date/Time: Wednesday, August 25, 2004 - 1:52 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any Shepard's signal to Shepardize® that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

A-7

*1991 Bankr. LEXIS 710, \*; 21 Bankr. Ct. Dec. 573*

IN RE: CHICAGO, MISSOURI & WESTERN RAILWAY COMPANY, Debtor

No. 88 B 5141

UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN
DIVISION

1991 Bankr. LEXIS 710; 21 Bankr. Ct. Dec. 573

February 20, 1991, Decided

**CORE TERMS:** notice, Bankruptcy Rule, claimant, reorganization, administrative claim, excusable neglect, proof of claim, late filing, post-petition, bankruptcy estate, tracks, train, plan of reorganization, debtor-in-possession, confidence, Illinois Contribution Act, personal injury, pro rata share, contingent, specified period, failure to act, tort victim, benefited, insolvent, supporting documentation, claims filed, cause shown, co-defendant, subrogation, preserving

**JUDGES:** [\*1]

John D. Schwartz, United States Bankruptcy Judge.

**OPINIONBY:** SCHWARTZ

**OPINION:** MEMORANDUM OPINION

Daniel Murray, Trustee for the Chicago, Missouri and Western Railway Company ("CM&W"), has objected to the contingent administrative claim filed by the Village of Alsip, Illinois ("Alsip"). Alsip maintains that any payment it might be required to make in a pending state court personal injury/wrongful death action is subject to contribution from CM&W under the Illinois Contribution Act (Ill. Rev. Stat. ch. 70, para. 302 (1989)), and is entitled to administrative priority pursuant to § 503(b)(1)(A) and § 507(a)(1) of the Bankruptcy Code. n1 The Trustee maintains (1) that the claim itself should be disallowed for being filed after the claims bar date, and (2) that should the claim be allowed, it is not entitled to administrative priority under the Bankruptcy Code. The court, after reviewing the pleadings, memoranda and supporting documentation, and for the reasons set forth below, denies the Trustee's objection to Alsip's claim on the basis of late filing. The court sustains the Trustee's objection to Alsip's claim for administrative priority.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 11 U.S.C §§ 101-1330 (1982 & Supp. 1990). All section references are to the Bankruptcy Code unless otherwise noted.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*2]**

A-8

Case 1:04-cv-00850-GMS    Document 21    Filed 06/01/2005    Page 36 of 42

Get a Document - by Citation - 21 Bankr. Ct. Dec. 573

Page 2 of 6

JURISDICTION

The court will consider whether Alsip's claim is barred by virtue of it being filed after the claims bar date and whether the claim for contribution would be entitled to administrative priority under § 503(b)(1)(A) and § 507(a)(1) of the Code. These matters constitute core proceedings under 11 U.S.C. § 157(b)(2)(B). In re Pettibone Corp., 110 Bankr. 837, 842 (Bankr.N.D. Ill 1990). Accordingly, the court has jurisdiction to entertain the matter pursuant to 28 U.S.C. § 1334 (1982 & Supp. 1990). The case is before the court by virtue of local rule 2.33 of the Northern District of Illinois referring bankruptcy cases and proceedings to this court for hearing and determination.

FACTS AND BACKGROUND

On August 24, 1989 Mark Bagwell ("Bagwell") was struck and killed by a CM&W train as he attempted to cross tracks in the vicinity of 123rd Street and Kostner Avenue in Alsip, Illinois. The tracks on which the accident occurred were on lease from the Baltimore and Ohio Chicago Terminal Railroad Company ("BOCTC") to the Indiana Harbor Belt Railway Company ("IHB"). At the time of Bagwell's death, CM&W was leasing the tracks from IHB pursuant to a non-exclusive [*3] lease. Alsip's involvement and alleged liability to the Bagwell estate arose from an easement granted to Alsip by BOCTC for the purpose of extending Kostner Avenue over the railroad tracks.

Subsequent to the accident, Bagwell's father, both individually and as special administrator of his son's estate, filed suit in an Illinois state court for wrongful death and personal injury against CM&W, IHB, BOCTC and the Village of Alsip. Bagwell v. IHB, et al., 90 L 978. Daniel R. Murray, as trustee for CM&W, was later brought in as a defendant in the state court action.

Prior to the accident, on April 1, 1988, CM&W commenced this case under Chapter 11 of the Bankruptcy Code pursuant to 11 U.S.C. § 301.

On February 21, 1990 the court, by Order No. 190, directed the Trustee to send out notice of an April 16, 1990 claims bar date to all of CM&W's known creditors. Notices of the bar date were mailed on March 14, 1990. The Village of Alsip was among those creditors to whom notice was sent. On June 26, 1990 Alsip filed its proof of claim for administrative priority. On October 31, 1990, the Trustee filed an objection to Alsip's claim.

By two opinions of November 7, 1990, the court disallowed [*4] the administrative claims filed by IHB and BOCTC for contractual indemnity, contribution and subrogation pursuant to § 503(b)(1)(A), § 507(a)(1), and § 1171. BOCTC and IHB filed interlocutory appeals of the rulings with the District Court. On December 6, 1990, Judge Shadur denied the motions for leave to appeal.

DISCUSSION

I. ALSIP'S FAILURE TO FILE CLAIM BY BAR DATE

The Trustee has objected to Alsip's claim arguing that the claim should be disallowed in its entirety by virtue of it being filed after the April 16, 1990 claims bar date. The Trustee has offered proof that notice of the bar date was sent to Alsip's correct address on March 14, 1990. Alsip does not contest this assertion. The Trustee argues further that notice of the bar date was received by Alsip since the notice was not returned to the Trustee as undelivered, and other claims which could not be delivered to the addresses provided were returned to the Trustee. (Trustee's Reply Memorandum In Support Of His Objection to Claims Of The Village Of Alsip; Exhibit A, p.1-2). The Trustee therefore argues that Alsip had notice of the bar date but nonetheless failed to timely file its claim. The Trustee argues that Bankruptcy [*5] Rule 3003(c)(3), which governs when a claim must be filed, is to be read in light of Bankruptcy

A–9

Case 1:04-cv-00850-GMS    Document 21    Filed 06/01/2005    Page 37 of 42

Get a Document - by Citation - 21 Bankr. Ct. Dec. 573                         Page 3 of 6

Rule 9006. Were this reading adopted, Alsip's claim would have to be disallowed absent a finding of "excusable neglect." Bankruptcy Rule 9006(b)(1).

Alsip contests the Trustee's allegations and asserts by affidavit that notice was never received. Alsip argues that since it did not receive notice of the bar date, the Court is empowered pursuant to Bankruptcy Rule 3003(c) to enlarge the period in which it may file its proof of claim. Alsip alleges that it filed its proof of claim for administrative priority on June 26, 1990, immediately after it first received knowledge of CM&W's bankruptcy pursuant to its receipt of BOCTC's motion to continue bankruptcy proceedings for the valuation of claims dated June 20, 1990.

In a case under Chapter 11, Bankruptcy Rule 3003(c) governs as to whom must file a proof of claim and when the claim must be filed. Bankruptcy Rule 3003(c)(2) provides:

Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision **[*6]** (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

Bankruptcy Rule 3003(c)(3) provides:

The Court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed.

Bankruptcy rule 3003(c)(3) has not been interpreted to be a statute of limitations leaving the court with no discretion to allow late filed claims. In re Candy Braz, Inc., 98 Bankr. 375, 380 (Bankr. N.D. Ill. 1988); In re Am. Skate Corp., 39 Bankr. 953, 954 (Bankr. D.N.H. 1984). It is quite clear that the court has the discretion to extend the bar date to allow for the filing of late claims in Chapter 11 cases. See, In re Jartran, 76 Bankr. 123, 126 (Bankr. N.D. Ill. 1987); In re Lester Witte & Co., 52 Bankr. 436, 438 (Bankr. N.D. Ill. 1984). The only real question is the scope of discretion permitted under Rule 3003(c)(3).

Courts in other jurisdictions, in the context of determining whether claims filed after the bar date should be allowed, have interpreted the phrase "for cause" in Rule 3003(c)(3) **[*7]** to be read in conjunction with Bankruptcy Rule 9006(b). See, In re Vertientes, Ltd. (Vertientes, Ltd. v. Internor Trade, Inc.), 845 F.2d 57, 59 (3rd Cir. 1988); In re South Atlantic Financial Corp. (Biscayne 21 Condominium Association, Inc. v. South Atlantic Financial Corp.), 767 F.2d 814, 817 (11th Cir. 1985), cert. den'd. 475 U.S. 1015 (1988). This is a reading asserted by the Trustee.

Bankruptcy Rule 9006(b) provides in part that "when an act is required . . . within a specified period . . ., the court for cause shown may at any time in its discretion . . . (2) on motion made after expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." (emphasis added). "Excusable neglect" has typically been found where the claimant failed to comply with the bar date without any lack or failure of diligence and, through no fault of his or her own, he or she had no notice of the bar date. South Atlantic, 767 F.2d at 818; In re Arrow Inc., 75 Bankr. 375, 377 (Bankr. S.D. Fla. 1987); In re Figueroa, 33 Bankr. 298, 301 (Bankr. S.D.N.Y. 1983). **[*8]** The use of the excusable neglect standard focuses the inquiry on the claimant's action or failure to act, and the reasons behind such action or failure. See, South Atlantic, 767 F.2d at 818-819. The effect on the bankruptcy estate resulting from the failure to file a claim prior to the bar date would not be of relevance to the court and would be precluded from examination under the excusable neglect standard.

The court rejects the excusable neglect standard adopted in the Third and Eleventh Circuits, and instead agrees with this jurisdiction's approach by refusing to read Rule 3003(c)(3) in

Case 1:04-cv-00850-GMS   Document 21   Filed 06/01/2005   Page 38 of 42
Get a Document - by Citation - 21 Bankr. Ct. Dec. 573
Page 4 of 6

light of Rule 9006(b). The basis of this decision is perhaps best explained by reference to the bankruptcy court's statement in In re Terex Corp, 45 Bankr. 290 (Bankr. N.D. Ohio 1985):

Rule 3003 deals specifically with the filing of proofs of claim in a Chapter 11 case. Rule 9006 deals with the computation of time within which an act must be performed in a general fashion. The general rule must yield to the specific; otherwise, Rule 3003(c)(3) would become a nullity.

Accord, Pettibone, 110 Bankr. at 890.

The court holds that this approach, **[*9]** which takes into consideration the effect on the reorganization plan of the late filing, best addresses the goals and policies behind Rule 3003 (c)(3). The function of a bar date is to allow a trustee in a bankruptcy to estimate the potential liability of the debtor. In re Chicago, Rock Island & Pacific Railroad Co., 788 F.2d 1280, 1281 (7th Cir. 1986); Pettibone, 110 Bankr. at 842. Such an estimation is essential to the efficient formulation of a plan of reorganization. Id. See also, In re Arrow Air Inc., 75 Bankr. at 378 ("an essential purpose of setting claims deadline . . . is to fully inform participants in the reorganization process as to the debtor's liabilities. Armed with this knowledge, proposals may be evaluated with confidence and negotiations may proceed without being hindered by undue caution and skepticism.").

Bankruptcy judges in this district have enumerated several factors to be considered in determining whether to allow the late filing of claims under Rule 3003(c)(3). These include: (1) the reason for the delay; (ii) the length of the delay; (iii) whether the debtor was prejudiced by the delay; (iv) **[*10]** the debtor's knowledge of the claim, and (v) the good faith of the creditor. Pettibone, 110 Bankr. at 842; Jartran, 76 Bankr. at 126; In re Lester Witte & Co., 52 Bankr. 436, 438 (Bankr.N.D. Ill 1984).

Using the factors enumerated in Jartran, the court holds that Alsip's claim should not be barred for being filed after the bar date. There is sufficient evidence to show that Alsip acted expeditiously, and therefore not in bad faith, by filing its claim on June 26, 1990 subsequent to the receipt of BOCTC's notice for a continuance on June 20, 1990. The late filing occurred only two months after the bar date, and the court notes further that although a petition in bankruptcy was filed three years ago, to date a plan of reorganization has not yet been filed. Further, since it is not controverted that notice was sent to Alsip, it is evident that CM&W and the Trustee had sufficient awareness to at least consider Alsip's potential claim against CM&W in the preparation of a plan of reorganization.

For the reasons as heretofore set out, the Trustee's objection, requesting that Alsip's claim be disallowed as being filed after the **[*11]** claims bar date, is hereby denied.

II. ALSIP'S CLAIM FOR ADMINISTRATIVE PRIORITY

Alsip seeks administrative priority for its claim for contribution in the state court action. The Trustee argues that Alsip's claim is not one which falls under § 503(b)(1)(A) and § 507(a)(1), and is not one which represents a necessary cost of preserving the estate sufficient for the claim to be given administrative priority. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The Trustee also asserts that Alsip's claim should be disallowed in its entirety on the basis that CM&W will settle with Bagwell's estate on the matter at issue in the state court proceeding. If CM&W makes a good faith settlement with Bagwell's estate in which it is released from further liability, CM&W cannot be held liable to Alsip or other co-defendants on contribution claims brought under the Illinois Contribution Act. Ill. Rev. Stat. ch. 70, para. 302

A-11

Case 1:04-cv-00850-GMS    Document 21    Filed 06/01/2005    Page 39 of 42

Get a Document - by Citation - 21 Bankr. Ct. Dec. 573                    Page 5 of 6

(d) (1989). The court here is neither allowing nor disallowing Alsip's claim pending disposition of the state court proceeding. To disallow Alsip's claim now, on the basis of CM&W's alleged intention to settle, would be premature and speculative.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - **[*12]**

The court first notes that Alsip's claim for contribution is contingent. Pursuant to the Illinois Contribution Act, the right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of common liability and his total recovery is limited to the amount paid by him in excess of his pro rata share. (Ill. Rev. Stat. ch. 70 para. 302 (1989)). Thus, only if Alsip is found liable in the state court action and pays more than its pro rata share, may Alsip seek contribution from CM&W. At this point, the court is merely deciding that if a claim for contribution arises, whether or not such claim is entitled to administrative priority.

The court is unaware of any other court which has addressed this precise issue: whether a co-defendant has an administrative claim against a debtor based on statutory contribution for a post-petition accident. In two opinions dated November 7, 1990, this court disallowed administrative status to claims of BOCTC and IHB for indemnification, contribution, and subrogation. The same factors which led the court to deny administrative priority in the IHB and BOCTC opinions are applicable here, and compel the denial of Alsip's administrative **[*13]** claim.

Section 503(b)(1)(A) provides in part that "the actual, necessary costs and expenses of preserving the estate" may be allowed as claims against the bankruptcy estate as an administrative expense. Section 507(a)(1) provides that claims entitled to first priority against the bankruptcy estate are those for administrative expenses allowed under § 503(b). Nowhere in the Bankruptcy Code are the terms "actual" and "necessary" defined. The Seventh Circuit has set out a two-part test for determining when a claim is entitled to administrative priority. In re Jartran Inc., 732 F.2d 584 (7th Cir. 1984). A claim will be afforded administrative priority if the claim both 1) arises from a transaction with the debtor-in-possession and 2) the transaction benefited the debtor-in-possession in the operation of its post-petition business. Id. at 587.

Alsip cannot meet either prong of the test set out in Jartran. First, Alsip's claim does not arise from a transaction between Alsip and CM&W or its Trustee; Alsip's claim is statutory. As to the second prong, Alsip alleges, "CM&W's failure to operate its trains with ordinary care was a breach of the continued **[*14]** confidence of its service to passengers of its post-petition trains." (Alsip's Response to Trustee's Objection to the Administrative Claim p. 7). As the Trustee has pointed out, however, CM&W's trains carried no passengers, and Alsip has not shown that there was continued confidence in CM&W post-petition activities which benefited the debtor-in-possession.

In Jartran, the court explained the policy reasons for granting priority under § 503(b)(1)(A) to those claims that promote reorganization outside of bankruptcy. Once a debtor has entered into bankruptcy, reorganization is doomed unless creditors can be induced to extend credit to the bankruptcy estate to permit effective reorganization. As the Jartran court explained "without a provision like § 503, efforts to reorganize would be hampered by the necessity of advance payments for all goods and services supplied to the estate since presumably no creditor would willingly assume the status of a non-priority creditor to a debtor undergoing reorganization." Jartran, 732 F.2d at 586. Alsip's claim does not appear to comport with the language and underlying purposes of § 503.

Nevertheless, courts have interpreted **[*15]** § 503 and § 507 to allow administrative priority status to tort claimants. In Reading Co. v. Brown, 391 U.S. 471 (1968), decided under

Chapter XI, § 64, of the former Bankruptcy Act, the court held that the personal injury claims of a tort victim would be entitled to administrative priority under § 503(b)(1)(A) and § 507(a) (1). In Reading, the Supreme Court found that it would be unfair to subordinate the claims of the tort victim to those creditors who would benefit from the continued operation of the business, when the tort claimant "did not merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law." Id. at 478. Also in In re Pettibone (Pettibone v. Ramirez), 90 Bankr. 918 (Bankr. N.D. Ill. 1988), the court stretched the Jartran test to hold that a post-petition tort claimant was entitled to administrative priority. These cases, however, limit the granting of administrative status to the tort claimants only. These cases should not be extended to permit administrative priority to Alsip for its contribution claim arising from the original tort claim. **[*16]** See Jartran, 732 F.2d at 586, citing In re Mammoth Mart, 536 F.2d 950, 953 (1st Cir. 1976)) ("Any preference for claims not intended by Congress to have priority would dilute the value of the intended priority and thus frustrate the intent of Congress.")

CONCLUSION

For the foregoing reasons, this court denies the Trustee's objection to Alsip's claim on the basis of late filing. The court sustains the Trustee's objection to Alsip's claim for administrative priority.

ORDER

This matter is before the court on the objection of Daniel Murray, Trustee for the Chicago, Missouri and Western Railway Company, to the administrative claim filed by the Village of Alsip. The court having considered the pleadings, memoranda and supporting documentation, and for the reasons stated in the accompanying Memorandum Opinion of even date:

IT IS HEREBY ORDERED that the Trustee's objection to the Village of Alsip's claim as being filed after the claims bar date is denied.

IT IS FURTHER ORDERED that Trustee's objection to Alsip's contingent claim for contribution as being entitled to administrative priority is sustained.

Service:  **Get by LEXSEE®**
Citation: **21 Bankr. Ct. Dec. (LRP) 573**
View:  Full
Date/Time: Wednesday, August 25, 2004 - 2:47 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

A-13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:                                        )
                                              )
WILLCOX & GIBBS, INC.,                        )        Civil Action No. 04-850 (GMS)
                                              )
                                              )        Bankruptcy Case ADV 01-00763
            Debtors.                          )
_____)
REXEL INC.,                                   )
                                              )        Civil Action No. 04-850 (GMS)
            Appellant,                        )
                                              )
      v.                                      )
                                              )
JUDITH MONTILLA,                              )
                                              )
            Appellee.                         )

## AFFIDAVIT OF WILLIAM WELLER, PARALEGAL

STATE OF DELAWARE        :
                         :  SS:
NEW CASTLE COUNTY        :

        I, William Weller, certify that I am, and at all times during the service, have been an
employee of Morris, James, Hitchens & Williams LLP, not less than 18 years of age and not a
party to the matter concerning which service was made.  I certify further that on June 1, 2005,  I
caused service of the following:

### ANSWERING BRIEF OF APPELLEE JUDITH MONTILLA

        Service was completed upon the parties on the attached list in the manner indicated
thereon.

Date: June 1, 2005

                                        _____
                                        William Weller

        SWORN AND SUBSCRIBED before me this 1st  day of June, 2005.

                                        _____
                                        NOTARY
                                        My commission expires:_____

                                        **KRISTEN E. LIZZANO**
                                        **Notary Public - State of Delaware**
                                        **My Comm. Expires Mar. 22, 2007**

WWW/102782-0001/1190324/1

**VIA HAND DELIVERY**

David M. Fournier, Esquire
Aaron A. Garber, Esquire
James C. Carignan, Esquire
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 N. Market Street, P.O. Box 1709
Wilmington, DE 19899-1709
(Attorneys for Rexel, Inc.)

James L. Patton, Jr., Esq.
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Office of United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035

**VIA FIRST CLASS MAIL**

Robert H. Levin, Esquire
Robert J. Lenathan, Esquire
Adelman, Lavine Gold and Levin, PC
Four Penn Center, Suite 900
Philadelphia, PA 19102
(Attorneys for Michael B. Joseph, Esquire,
 Chapter 7 Trustee for Debtor)

P. Jefferson Ballew, Esquire
Todd D. Leitstein, Esquire
Thompson & Knight, LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX 7501
(Attorneys for Rexel, Inc.)

Regis Staley, Esquire
White, Quinlen & Staley
377 Oak Street
Garden City, NY 11530
(Debtor's State Court Litigation Counsel)